Nicole C. Hancock, ISB No. 6899
 nicole.hancock@stoel.com
J.B. Evans, ISB No. 10537
 jb.evans@stoel.com
STOEL RIVES LLP
101 S Capitol Boulevard, Suite 1900
Boise, ID  83702
Telephone:  208.389.9000
Facsimile:  208.389.9040

Attorneys for Cureous Innovations Inc.

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| In re:<br><br>IDAHO HEALTH DATA EXCHANGE, INC.<br><br>Debtor. | Case No. 22-00355-JMM<br><br>Chapter 11<br>Subchapter V |
| IDAHO HEALTH DATA EXCHANGE, INC., an Idaho corporation,<br><br>Plaintiff,<br><br>v.<br><br>CUREOUS INNOVATIONS INC., a Delaware corporation; ADA COUNTY DISTRICT COURT, a political subdivision of the State of Idaho,<br><br>Defendants. | Adversary No. 22-06018-JMM<br><br>**CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND COUNTERCLAIM** |
| CUREOUS INNOVATIONS INC., a Delaware corporation,<br><br>Counterclaimant,<br><br>v.<br><br>IDAHO HEALTH DATA EXCHANGE, INC., an Idaho corporation,<br><br>Counterdefendant. | |

COMES NOW Defendant Cureous Innovations Inc. ("*Cureous*" or "*Defendant*"), by and through its counsel of record, Stoel Rives LLP and without admitting any liability or damages to Plaintiff and without assuming the burden of proof as to any issue in this litigation, in answer and response to Idaho Health Data Exchange, Inc.'s (the "*Debtor*" or "*Plaintiff*" or "*IHDE*") Complaint to Avoid Preference Transfers and Recover Funds and Objection to Claim (respectively, the "*Complaint*" and the "*Objection*"), and admits, denies, and alleges as follows. Any allegation not specifically admitted or qualified herein shall be deemed denied.

## I. ANSWER TO COMPLAINT

### NATURE OF ACTION

1.      In response to Paragraph 1 of the Complaint, Defendant denies it has seized or is otherwise in possession of any funds pursuant to the writ of attachment.  Defendant admits that the Ada County Sheriff garnished funds from IHDE.  Upon information and belief, those funds are being held with the Ada County District Court.  The remaining allegations in Paragraph 1 assert legal conclusions to which no response is required.

### PARTIES

2.      Defendant admits the allegations contained in Paragraph 2 of the Complaint.

3.      Defendant admits the allegations contained in Paragraph 3 of the Complaint.

4.      Upon information and belief, Defendant admits the allegations contained in Paragraph 4 of the Complaint.

### JURISDICTION AND VENUE

5.      In response to Paragraph 5 of the Complaint, Defendant responds that Paragraph 5 contains legal conclusions to which no response is required.

6.      In response to Paragraph 6 of the Complaint, Defendant responds that Paragraph 6 contains legal conclusions to which no response is required.

7.      In response to Paragraph 7 of the Complaint, Defendant responds that Paragraph 7 contains legal conclusions to which no response is required.  Nevertheless, to the extent the claims pursued herein are not core proceedings, Defendant expressly consents to the entry of final orders and judgment on all claims in this proceeding by the Bankruptcy Court.

8.      In response to Paragraph 8 of the Complaint, Defendant responds that Paragraph 8 contains legal conclusions to which no response is required.

9.      In response to Paragraph 9 of the Complaint, Defendant responds that Paragraph 9 contains legal conclusions to which no response is required.

## FACTUAL BACKGROUND

10.      Defendant admits the allegations contained in Paragraph 10 of the Complaint.

11.      Defendant admits the allegations contained in Paragraph 11 of the Complaint.

12.      Defendant admits the allegations contained in Paragraph 12 of the Complaint.

13.      The allegations in Paragraph 13 of the Complaint characterize the Master Services Agreement ("*MSA*"), which document speaks for itself.  Defendant denies the remaining allegations contained in Paragraph 13.

14.      The allegations in Paragraph 14 of the Complaint characterize the Statement of Work 2 ("*SOW 2*"), which document speaks for itself.  Defendant specifically denies that SOW 2 was the operative agreement governing IHDE's TermAtlas® and Smart HL7 license rights because the parties reached an agreement to amend SOW 2.  Defendant denies the remaining allegations contained in Paragraph 14.

15.      The allegations in Paragraph 15 of the Complaint characterize SOW 2, which

document speaks for itself.  Defendant denies the remaining allegations contained in Paragraph 15.

16.     The allegations in Paragraph 16 of the Complaint characterize the Statement of Work 3 ("*SOW 3*"), which document speaks for itself.  Defendant denies the remaining allegations contained in Paragraph 16.

17.     In response to Paragraph 17 of the Complaint, Defendant responds that Paragraph 17 contains legal conclusions to which no response is required.  Defendant admits that IHDE signed SOW 3 but specifically denies that SOW 3 was the operative agreement governing Cureous's provision of infrastructure as a service to host TermAtlas® and Smart HL7 because the parties reached an agreement to amend SOW 3.  Defendant denies the remaining allegations contained in Paragraph 17.

18.     Defendant denies the allegations contained in Paragraph 18 of the Complaint.

19.     In response to Paragraph 19 of the Complaint, Defendant admits that IHDE paid Cureous $458,500 and admits that the payment was for the licenses and services provided under SOW 3.  Defendant denies the remaining allegations contained in Paragraph 19.

20.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint and, on that basis, denies, generally and specifically, each and every allegation contained therein.

21.     Defendant admits the allegations contained in Paragraph 21 of the Complaint.

22.     Defendant admits the allegations contained in Paragraph 22 of the Complaint.

23.     Defendant admits the allegations contained in Paragraph 23 of the Complaint.

24.     Defendant admits the allegations contained in Paragraph 24 of the Complaint.

25.     On information and belief, Defendant admits that the Ada County Sheriff garnished

funds from IHDE pursuant to the Ada County Court's order granting a prejudgment writ of attachment.  Defendant lacks direct information and knowledge sufficient to respond to the remaining allegations in Paragraph 25 of the Complaint and therefore denies the same.

26.      Defendant admits the allegations contained in Paragraph 26 of the Complaint.

27.      Paragraph 27 of the Complaint contains legal conclusions to which no response is required.

### COUNT 1: AVOIDANCE OF PREFERENCE TRANSFERS (11 U.S.C. § 547)

28.      In response to Paragraph 28 of the Complaint, Defendant incorporates the responses to all preceding paragraphs as though fully set forth herein.

29.      Defendant admits the allegations contained in Paragraph 29 of the Complaint.

30.      Defendant admits the allegations contained in Paragraph 30 of the Complaint.

31.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 of the Complaint and, on that basis, denies, generally and specifically, each and every allegation contained therein.

32.      Defendant admits the allegations contained in Paragraph 32 of the Complaint.

33.      Defendant admits the allegations contained in Paragraph 33 of the Complaint.

34.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 34 of the Complaint and, on that basis, denies, generally and specifically, each and every allegation contained therein.

35.      Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 of the Complaint and, on that basis, denies, generally and specifically, each and every allegation contained therein.

36.      Defendant is without knowledge or information sufficient to form a belief as to the

truth of the allegations in Paragraph 36 of the Complaint and, on that basis, denies, generally and specifically, each and every allegation contained therein.

37.     Paragraph 37 of the Complaint contains legal conclusions to which no response is required.

38.     Defendant is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 38 of the Complaint and, on that basis, denies, generally and specifically, each and every allegation contained therein.

39.     In response to Paragraph 39 of the Complaint, Defendant responds that Paragraph 39 contains legal conclusions to which no response is required.  The remaining allegations appear to be directed at the Ada County District Court and therefore no response from Cureous is required. To the extent further response is necessary, Defendant denies the allegations contained in Paragraph 39.

## COUNT 2: OBJECTION TO PROOF OF CLAIM

40.     In response to Paragraph 40 of the Complaint, Defendant incorporates the responses to all preceding paragraphs as though fully set forth herein.

41.     Defendant admits the allegations contained in Paragraph 41 of the Complaint.

42.     Defendant admits that IHDE asks the Court to determine the validity of Cureous's claims against the Debtor but denies that IHDE is entitled to the relief it seeks.

43.     In response to Paragraph 43 of the Complaint, Defendant admits that it has asserted a secured claim in the Debtor's bankruptcy case.  Defendant further admits that IHDE asks the Court to determine the validity and extent of any lien claimed by Cureous but denies that IHDE is entitled to the relief it seeks.

**ATTORNEYS' FEES AND COSTS**

44.    Defendant denies the allegations in IHDE's request for attorneys' fees.

**AFFIRMATIVE DEFENSES**

By asserting the defenses set forth below, Defendant does not allege or admit:  that it has any fault, responsibility, or liability for the claims alleged in the Complaint; that it has the burden of proof and/or burden of persuasion with respect to any of these defenses; or that Plaintiff is relieved of its burden to prove each and every element of its claims and the damages, if any, to which it may be entitled.  Defendant further asserts that it will rely upon all proper defenses lawfully available that may be disclosed by the evidence and reserves the right to amend this Answer to state such defenses.  As for affirmative and other defenses, Defendant reasserts and reincorporates all of the preceding paragraphs as if fully set forth herein.

1.    IHDE fails to state a claim upon which relief may be granted.

**REQUEST FOR ATTORNEYS' FEES AND COSTS**

Defendant requests that it be awarded attorneys' fees and costs incurred pursuant to Idaho Code §§ 12-120 and 12-121, Idaho Rule of Civil Procedure 54, and any other applicable law.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant requests that judgment be entered granting relief as follows:

1.    That the Court dismiss Plaintiff's Complaint with prejudice;

2.    For an award of attorneys' fees in the defense of this action as allowed by law, including but not limited to Idaho Code §§ 12-120 and 12-121 and Idaho Rule of Civil Procedure 54;

3.    For an award of costs and expenses incurred herein; and

4.    For such other and further relief as the Court deems just and equitable.

## II. <u>COUNTERCLAIMS</u>

Defendant/Counterclaimant Cureous Innovations Inc. ("***Cureous***") by and through its undersigned counsel Stoel Rives LLP, hereby files its counterclaim against Plaintiff/Counterdefendant Idaho Health Data Exchange, Inc. ("***IHDE***") and states and alleges as follows:

### PARTIES

1.      Cureous is a Delaware corporation existing under the laws of the State of Delaware with its principal place of business located in New Gloucester, Maine.

2.      IHDE is an Idaho 501(c)(3) corporation organized and existing under the laws of the State of Idaho with its principal place of business located in Ada County, Idaho.

### JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 157 and 1334.

4.      Each of Cureous's counterclaims either arises under Title 11 of the United States Code or arises in and is related to a bankruptcy case under Chapter 11 that is pending in this district (Case No. 22-00355-JMM).

5.      Venue is proper in this district under 28 U.S.C. § 1409(a).

6.      Cureous brings its counterclaims pursuant to Federal Rule of Bankruptcy Procedure 7013.

7.      Cureous expressly consents to the Bankruptcy Court's jurisdiction and its power and authority to enter final orders and judgments with respect to IHDE's claims and Cureous's counterclaims in this adversary proceeding.

### STATEMENT OF FACTS

8.      Cureous is a health care data and technology company that owns and licenses

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND COUNTERCLAIM - 8

healthcare interoperability software that tracks data and deploys that data across a multitude of healthcare software systems and operations in order to maximize data sharing between a variety of healthcare programs.

9.    IHDE formed in 2008 through Idaho legislature funding and has subsisted on the use of federal and state funds since formation.

10.    IHDE is a statewide, designated, internet-based health information exchange ("*HIE*") that is designed to provide statewide coordination of health care in Idaho.

### SUPPORT ACT GOVERNMENT FUNDING

11.    On October 24, 2018, President Trump signed into law the Substance Use-Disorder Prevention That Promotes Opioid Recovery and Treatment for Patients and Communities Act or the SUPPORT for Patients and Communities Act, Public Law No. 115-271 (the "*SUPPORT Act*").

12.    The SUPPORT Act was intended to make medical treatment for opioid addiction more widely available while also stamping out the trafficking of illicit drugs, including prescription controlled substances.

13.    To further this goal, the SUPPORT Act mandated that each state establish a qualifying Prescription Drug Monitoring Program ("*PDMP*") and require healthcare providers to check the PDMP for a Medicaid enrollee's prescription drug history before prescribing controlled substances to the enrollee.

14.    The SUPPORT Act also authorized federal support for specific PDMP improvements regarding use, data reporting, and intrastate and interstate interoperability.

### DEPARTMENT OF HEALTH AND WELFARE, CMS FUNDING, AND IHDE'S AGREEMENT WITH THE DEPARTMENT OF HEALTH AND WELFARE

15.    The Idaho Department of Health and Welfare worked with IHDE to design

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND COUNTERCLAIM - 9

117402988.1 0073566-00001

upgrades to the HIE that would qualify for SUPPORT Act funding through Centers for

Medicaid/Medicare Services ("**CMS**") or other government funding sources.

16.     To be eligible for SUPPORT Act funding, contract deliverables had to be reviewed

and approved by the Department of Health and Welfare before October 1, 2020 to be considered

"complete" during the SUPPORT Act term.

17.     Thus, the Department of Health and Welfare would not receive federal funding for

Software as a Service ("**SaaS**") or hosting renewals due after October 1, 2020.

18.     CMS would, however, fund a three-year SaaS license term if prepayment of the

longer term would result in more favorable pricing.

19.     The Department of Health and Welfare wanted to maximize the opportunity to

leverage SUPPORT Act funding by seeking discounted multi-year contracts.  The Department of

Health and Welfare asked IHDE to gather any vendor contracts that met the CMS requirements

for prepaid, discounted three-year terms.

20.     On information and belief, IHDE approached each of its vendors to request

discounted rates in exchange for prepayment of a three-year license term that would satisfy CMS

requirements.

**IHDE AND CUREOUS CONTRACTS**

21.     One of IHDE's vendors was Cureous.

22.     IHDE and Cureous executed a Master Services Agreement ("**MSA**"), effective

December 18, 2019.

23.     The MSA contained the general terms and conditions that governed the products

and services Cureous would provide to IHDE in order for IHDE to operate an electronic HIE in

Idaho.

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE
TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND
COUNTERCLAIM - 10

24.     HIE software allows medical service providers to chart, track, store, and access private medical information on a secure database that can be viewed and utilized across multiple locations within the strict regulatory environment of healthcare information security requirements.

25.     For each specific product or service, the parties agreed to enter into a Statement of Work ("***SOW***") that would be governed by the general terms contained in the MSA and the specific details in the SOW.  IHDE and Cureous entered into five separate SOWs, including the SOWs to be used with SUPPORT Act funding.

26.     SOW 1 leveraged funding from a different act (the HiTech Act) and is not at issue in this action.  SOWs 2, 3, 4, and 5 were premised on SUPPORT Act funding.

27.     The original SOW 2 ("***Original SOW 2***") governed IHDE's license rights to TermAtlas® and Smart HL7 software and support services for one year only.

28.     Under the Original SOW 2, the TermAtlas® license fee was $180,000 per year and the Smart HL7 license fee was $70,000 per year.

29.     IHDE executed the Original SOW 2 for a one-year license fee for TermAtlas® and Smart HL7.

30.     The original SOW 3 ("***Original SOW 3***") governed Cureous's provision of internet as a subscription services ("***IaaS Service***") to host TermAtlas® and Smart HL7 for $15,000 per month for the first year.

31.     IHDE executed the Original SOW 3 for a one-year IaaS Service term at $15,000 per month.

32.     Cureous incurred costs and overhead to activate the licenses and subscriptions contemplated by Original SOW 2 and Original SOW 3.

33.     SOW 4 governed the installation and implementation of TermAtlas® and Smart

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE
TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND
COUNTERCLAIM - 11
117402988.1 0073566-00001

HL7 software system for a total cost of $624,380.

34.    SOW 5 governed the project labor for the time period between April 8, 2020 and September 30, 2020 for a total cost of $437,932.

35.    On or around March 17, 2020, IHDE emailed the proposed Cureous MSA, the Original SOW 2, the Original SOW 3, and SOW 4 to the Department of Health and Welfare for review and approval for IHDE to execute the agreements.

36.    On or around April 10, 2020, the Department of Health and Welfare communicated to IHDE that both it and CMS had reviewed the SOWs and did not see any issues and asked IHDE to proceed with executing the agreements.

37.    IHDE executed both SOW 4 and SOW 5 and paid in full for the work performed under SOW 4 and SOW 5.

38.    The Department of Health and Welfare later asked IHDE if it could take advantage of a three-year license agreement in order to maximize the amount of CMS or government funding that could be applied to IHDE's project.

39.    IHDE was informed that it could receive CMS payments for the software licenses if the entire multi-year license fee was paid in calendar year 2020, but CMS could not pay for license renewals in years 2021 and 2022.

40.    IHDE approached Cureous to ask if it could negotiate a three-year license under SOW 2 and SOW 3 and receive a discount for payment in full in calendar year 2020.

41.    By May 18, 2020, Cureous provided IHDE with a three-year licensing term and IaaS Services under an amended SOW 2 ("*Amended SOW 2*") and amended SOW 3 ("*Amended SOW 3*").

42.    The Amended SOW 2 provided for a three-year license fee of TermAtlas® for a

total of $522,000 (representing $180,000 for year one, and $171,000 for each of years two and three), and a three-year license fee of Smart HL7 for a total of $203,000 ($70,000 for year one, and $66,500 for each of years two and three) with the payment for the fees for the three-year licenses paid in advance.

43.     Cureous also sent IHDE an Amended SOW 3 for a three-year IaaS Service fee of $15,000 per month for the first year and $14,250 per month for years two and three, for a total of $522,000 for all three years if paid in advance.

44.     IHDE provided the Amended SOW 2 and Amended SOW 3 to the Department of Health and Welfare for approval on or around May 18, 2020.

45.     IHDE and the Department of Health and Welfare met in person to discuss the multi-year license agreements between IHDE and Cureous in July 2020 and confirmed that the Department of Health and Welfare had to approve and pay the license fees before October 1, 2020 to be considered "complete" during the SUPPORT Act term.

46.     On or around May 21, 2020, IHDE agreed to proceed with the Amended SOW 2 and Amended SOW 3.

47.     On or around July 7, 2020, IHDE presented to the Department of Health and Welfare an invoice for "TermAtlas™ – 3 years" and "Smart HL7 Message Archive – 3 Years" under the Amended SOW 2 and an invoice for "Monthly Hosting – 3 years" under the Amended SOW 3.

48.     Based on the three-year prepaid agreements with Cureous, IHDE acknowledged to Cureous that IHDE owed the funds to Cureous and told the Department of Health and Welfare that there was immediately due and owing to Cureous $725,000 for Cureous's Amended SOW 2 and $492,000 for the Amended SOW 3, which for the Amended SOW 3 included a $30,000 credit for

amounts already billed to date.

49.    When the Department of Health and Welfare did not immediately process the three-year prepaid licensing fees, IHDE and Cureous followed up repeatedly with the Department of Health and Welfare, with IHDE representing to both Cureous and the State that the Cureous prepaid licensing fees were immediately due and owing.

50.    Based on IHDE's representations to Cureous and the Department of Health and Welfare and CMS, CMS approved the Amended SOW 2 and the Amended SOW 3 on or around September 10, 2020, and the Department of Health and Welfare approved the Amended SOW 2 and the Amended SOW 3 on or around September 17, 2020.

51.    On September 21, 2020, IHDE executed an electronic certification acknowledging that $2.3 million was due to Cureous for the period between August 1, 2020 and September 24, 2020.

52.    IHDE's certified acknowledgment of amounts due included the advance three-year payment for Cureous's Amended SOW 2 and Amended SOW 3, which were consistent with the promises and assurances IHDE gave to Cureous that IHDE was bound by those amendments and the three-year term.

53.    Based on IHDE's certified representations to the Department of Health and Welfare and based on IHDE's approved Amended SOW 2 and Amended SOW 3, the Department of Health and Welfare paid to IHDE the three-year advance payment for the Amended SOW 2 and the Amended SOW 3 on or around October 7, 2020, with the funds to be immediately passed through to Cureous.

54.    The funds the Department of Health and Welfare paid to IHDE on or around October 7, 2020 were earmarked for Cureous and intended only to be passed through immediately

to pay the Cureous invoices.

55.     IHDE was experiencing financial struggles when it received Cureous's funds from the Department of Health and Welfare.

56.     IHDE had previously sought permission from the Department of Health and Welfare to pay the license expenses at its discretion over the three-year license term so that the Cureous funds could be "reallocated" to other vendors.

57.     On information and belief, the Department of Health and Welfare did not approve IHDE's request to reallocate funds to any other vendor nor did it permit the three-year advance payment for Cureous's license fees to be paid to any vendor other than Cureous.

58.     The funds were specifically earmarked to be paid to Cureous and solely intended to be passed immediately through IHDE to pay the contractual obligations owed to Cureous.

59.     Cureous told IHDE if it paid other vendors with funds approved for payment to Cureous, that it would be an illegal misappropriation of funds.

60.     IHDE had represented to Cureous and the Department of Health and Welfare that the funds needed for the license fees were intended to be a pass-through and would be directly and immediately paid to Cureous.

61.     Despite its promises, IHDE did not pay Cureous the advance payment for three years' worth of licensing and services under the Amended SOW 2 and the Amended SOW 3.

62.     On or about October 20, 2020, Cureous received a check from IHDE for $624,380.00, which paid SOW 4 in full.

63.     On or about November 16, 2020, Cureous received two checks from IHDE for a total of $437,887.00, which paid SOW 5 in full.

64.     On or about December 2, 2020, Cureous received two checks from IHDE totaling

$458,500. The remittance advice on these checks indicated that they were for SOW 3 and were originally applied as such. IHDE later claimed that it intended these funds to cover year one of Amended SOW 2 and year one of Amended SOW 3, leaving a deficit owed to Cureous even though IHDE had the pass-through funds from the Department of Health and Welfare.

65.     Thus, by the end of 2020, IHDE had paid Cureous only $1,520,767.00 of the $2.3 million payment it had received from the Department of Health and Welfare and IHDE kept $788,544.00 in its own accounts, which was the remaining outstanding balance owed to Cureous and paid by the Department of Health and Welfare to IHDE and earmarked for Cureous.

66.     The funds retained by IHDE were earmarked for Cureous.

67.     The funds retained by IHDE were intended to be an immediate pass-through to be paid to Cureous.

68.     IHDE had no justified reason to keep the $788,544.00.

69.     IHDE deceived the Department of Health and Welfare and Cureous by representing that the $788,544.00 would be paid under Amended SOW 2 and Amended SOW 3, when in fact IHDE knew at the time it entered into the agreements and made the assurances and promises that it did not intend to pay those funds to Cureous.

70.     IHDE intentionally represented that Amended SOW 2 and Amended SOW 3 required advance payment for all three years and then intentionally withheld those funds from Cureous once the Department of Health and Welfare paid those sums to IHDE.

71.     IHDE wrongfully withheld payment from Cureous in the amount of $788,544.00.

72.     On November 2, 2020, IHDE wrote to the Department of Health and Welfare threatening financial ruin or bankruptcy if the Department of Health and Welfare did not pay IHDE for deliverables related to its other vendors. IHDE stated that it was withholding the remainder of

the Department of Health and Welfare's payment to Cureous out of fear that the Department of Health and Welfare would demand return of the Cureous payment.

73.    IHDE informed Cureous that IHDE was afraid the Department of Health and Welfare would claw back the Cureous funds, so IHDE did not want to release those funds without assurances that the Department of Health and Welfare would not come back after IHDE for reimbursement.

74.    IHDE was dishonest about its fears that the Department of Health and Welfare would claw back funds and lied about it as a way to delay releasing any funds to Cureous.

75.    IHDE continued its fraud and informed Cureous that it could not pay the full license fees even though it had the funds in its account because the Department of Health and Welfare may terminate IHDE's contract and claw back the funds and IHDE did not want to be held liable if the funds were not available to claw back.

76.    Cureous confirmed with the Department of Health and Welfare that there was no risk of the funds being clawed back from IHDE and notified IHDE that Cureous knew IHDE was misrepresenting the situation.

77.    On November 20, 2020, the Department of Health and Welfare wrote to IHDE with concern that IHDE had not paid Cureous in full when the Department of Health and Welfare gave IHDE the money to pay Cureous on or around October 7, 2020.

78.    IHDE responded on November 23, 2020, acknowledging that IHDE now understood that the Department of Health and Welfare wanted IHDE to pay Cureous for the three-year licensing fee under the Amended SOW 2 and Amended SOW 3, and that "IHDE will pay [Cureous] for any outstanding licensing/hosting fees."

79.    IHDE likewise represented to Cureous that payment would be forthcoming.

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE
TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND
COUNTERCLAIM - 17

80.     IHDE made its representations knowing the statements were false and that IHDE had no intention of paying the funds to Cureous and again offered these assurances as a means of perpetuating the same fraudulent intent for IHDE to keep the funds that were earmarked for Cureous.

81.     After making the representation to the Department of Health and Welfare and to Cureous, IHDE tried another story to justify why it wrongfully withheld Cureous's funds. IHDE next took the position that the Amended SOW 2 and Amended SOW 3 had not been executed and therefore years two and three were not due and owing and there was no three-year advance payment owed to Cureous.

82.     On December 2, 2020, IHDE wrote to the Department of Health and Welfare and for the first time took the position that it was only paying for one year of license fees.

83.     The Department of Health and Welfare responded to IHDE on December 21, 2020, reiterating that IHDE had received $2.3 million on October 7, 2020 to cover three years' worth of license and hosting fees.

84.     Notwithstanding the clear direction from the Department of Health and Welfare, IHDE continued to maintain its position that it did not owe three years of advance payment under the Amended SOW 2 and the Amended SOW 3.

85.     Rather than engage in costly litigation, and without waiving its rights under the parties' agreements, Cureous waited to see if IHDE would pay year two by June 2021.

**IHDE CONTINUED TO MISLEAD CUREOUS ON YEAR TWO'S
LICENSING AND HOSTING AGREEMENTS**

86.     On May 26, 2021, IHDE's Jesse Meldru (IHDE's Director of Finance) wrote to Cureous and expressed its intent to renew its agreements for year two.

87.     IHDE's May 26, 2021 renewal letter states in full:

Please accept this as IHDE's intent to exercise the renewal option for year two in its contracts for TermAtlas™ & Smart HL7 Message Archive licenses as well as the associated hosting services.  We would expect an invoice accordingly.

88.     On May 27, 2021, Cureous sent to IHDE invoices for Amended SOW 2 and Amended SOW 3 in the amounts of $725,000 and $492,000, respectively.

89.     Of the amounts invoiced, $408,500 was owing for year two, with the balance owing for the third year.

90.     Despite representing that it wanted to "renew" year two, IHDE never paid the invoices and did not respond to the May 27, 2021 email attaching the invoices.

91.     On June 3, 2021, Cureous followed up to inquire about IHDE's payment and again IHDE did not respond and did not pay the invoices.

92.     On June 10, 2021, Cureous again followed up to inquire about IHDE's payment.

93.     On June 15, 2021, IHDE's Joyce Alexander responded saying that she had "not been given a date to process payment yet, so I will have to defer to Jesse [Meldru] for this information."

94.     IHDE's Jesse Meldru responded on July 9, 2021, and wrote the following:

We did not receive a new [Cureous] invoice for year two, so, IHDE will go ahead and pay [Cureous] the amount [Cureous] referenced below for year two, $408,500.  Given the absence of the requested invoice, IHDE has been left to determine the payable timeline and has concluded that the software renewal effective date of June 24th is appropriate for establishing the invoice date for the payment, thus initiating 21 days payable timeline (i.e., July 15th).  Perhaps your team could provide ACH information so IHDE could more efficiently transfer funds.

95.     The same day, on July 9, 2021, Cureous provided ACH payment information, confirmed the amount owed for year two was $408,500, and confirmed that it had previously sent

the invoices to IHDE for payment.

96.     IHDE did not make any payments to Cureous following its continued assurances and promises that the payment was forthcoming.

97.     Cureous inquired on July 28, 2021 about the overdue payment and IHDE's Jesse Meldru responded by stating that IHDE was "expecting to make the payment within the next couple of days."

98.     On August 4, 2021, Cureous again checked on the payment.

99.     IHDE did not respond to Cureous's August 2021 communication.

100.    IHDE has now stopped responding altogether and has not made payment for years 2 or 3 under the MSA, SOWs, and Amended SOWs.

101.    IHDE announced on July 29, 2021 that it contracted for Orion Health to provide HIE services.

102.    Upon information and belief, IHDE is using the funds that the Department of Health and Welfare paid to IHDE for the three years' advance payments under Amended SOW 2 and Amended SOW 3 to pay Orion Health for HIE services.

**IDAHO DISTRICT COURT ISSUES CONTINUING WRIT OF ATTACHMENT**

103.    On September 29, 2021, Cureous, as plaintiff, filed Case No. CV01-21-15209 in the District Court of the Fourth Judicial District of the State of Idaho (Ada County) ("***District Court***") against IHDE, as defendant, seeking relief for the breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud described herein.

104.    On December 8, 2021, Cureous applied for a prejudgment writ of attachment from the District Court (the "***Writ of Attachment***").

105.    On May 3, 2022, the District Court granted Cureous's application for the Writ of

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND COUNTERCLAIM - 20
117402988.1 0073566-00001

Attachment, issuing its Memorandum Decision and Order Granting Plaintiff's Application for Prejudgment Writ of Attachment (the "***Memorandum Decision***").

106.   In the Memorandum Decision, the District Court granted the application for the Writ of Attachment and held that Cureous made a showing sufficient to demonstrate that IHDE was obligated to immediately and directly pay Cureous after receiving funds from the Department of Health and Welfare.

107.   The District Court held that it was reasonably probable that Cureous would prevail on its breach of contract claim because IHDE and Cureous had an agreement between them with respect to Amended SOW 2 and Amended SOW 3.

108.   The District Court held that there did not appear to be any dispute that the Department of Health and Welfare advanced the money owing under Amended SOW 2 and Amended SOW 3 to IHDE for the purpose of paying those funds to Cureous for a discounted three-year term of services.

109.   The District Court held that the Department of Health and Welfare undisputedly advanced taxpayer money for services specially earmarked to go to Cureous so that Cureous would provide services to the state for a three-year period.

110.   On May 7, 2022, the District Court issued a continuing Writ of Attachment against IHDE and in favor of Cureous in the amount of $788,544.

111.   Based on the Writ of Attachment, the Ada County Sheriff subsequently garnished the amount of $469,767.83, which amount, upon information and belief, is still being held by the District Court.

## FIRST CAUSE OF ACTION

### Breach of Contract

112.    Cureous hereby incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

113.    IHDE and Cureous are parties to the MSA and related SOWs and Amended SOWs.

114.    IHDE failed to make payments obligated under the Amended SOW 2 and the Amended SOW 3.

115.    Alternatively, IHDE failed to make payments obligated under the Original SOW 2 and the Original SOW 3.

116.    Cureous has suffered damages as a direct and proximate result of IHDE's breach(es) in an amount to be proven at trial.

## SECOND CAUSE OF ACTION

### Breach of the Implied Covenants of Good Faith and Fair Dealing

117.    Cureous hereby incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

118.    IHDE owes a duty of good faith and fair dealing to Cureous.

119.    IHDE breached its duty of good faith and fair dealing by refusing to make payments obligated to Cureous and by retaining funds paid by the Department of Health and Welfare that were earmarked for Cureous and intended to be passed through to Cureous.

120.    IHDE has knowingly, intentionally, and willfully violated its obligations to Cureous.

121.    Cureous has suffered damages as a direct and proximate result of IHDE's breach of the implied covenant of good faith and fair dealing in an amount to be proven at trial.

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND COUNTERCLAIM - 22

117402988.1 0073566-00001

## THIRD CAUSE OF ACTION

### Fraud

122.    Cureous hereby incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

123.    IHDE sought a three-year licensing and hosting agreement with Cureous, negotiating a discount for fees paid in advance.

124.    IHDE made direct representations to the Department of Health and Welfare seeking its approval of the Amended SOW 2 and the Amended SOW 3.

125.    IHDE represented to the Department of Health and Welfare that all three years were due and owing under Cureous's Amended SOW 2 and Amended SOW 3 with the intent that the Department of Health and Welfare pay the entire sums to IHDE.

126.    The Department of Health and Welfare relied on IHDE's representations, approved the three-year license term and hosting term, and made payment to IHDE with the intent that the funds be passed through and immediately paid to Cureous.

127.    IHDE represented to Cureous that it agreed to the three-year licensing and hosting terms as provided in the Amended SOW 2 and the Amended SOW 3.

128.    IHDE's representations that it agreed and would pay Cureous for three years of advance licensing and hosting fees were not true.

129.    IHDE's representations to the Department of Health and Welfare that it required payment for all three years of licensing and hosting fees owed to Cureous under the Amended SOW 2 and the Amended SOW 3 were not true.

130.    IHDE intentionally did not execute the Amended SOW 2 and Amended SOW 3.

131.    IHDE never intended to pass through the funds it obtained from the Department of

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND COUNTERCLAIM - 23

Health and Welfare for payment of the Amended SOW 2 and Amended SOW 3.

132.    IHDE intended to keep and has kept the payments the Department of Health and Welfare paid to IHDE for the Amended SOW 2 and the Amended SOW 3, with the exceptions of the payments made as described above.

133.    IHDE has kept at least a portion of the funds the Department of Health and Welfare paid to IHDE for payment to Cureous with the intent to utilize those funds for other business purposes.

134.    IHDE misrepresented to both Cureous and the Department of Health and Welfare how IHDE would use the funds.

135.    IHDE continued its misrepresentations by promising to pay Cureous and by informing the Department of Health and Welfare that it would pay Cureous.

136.    IHDE intentionally deceived the Department of Health and Welfare and Cureous about its intent to perform the Amended SOW 2 and the Amended SOW 3 payments.

137.    IHDE perpetuated the deceit when it continued to change its excuses as to why it was withholding funds intended for Cureous.

138.    IHDE perpetuated the deceit when it claimed to renew the year two license agreement and again promised payment was forthcoming.

139.    IHDE perpetuated the deceit when it continued to come up with justifications as to why it had not yet made payment, continuing to string Cureous along.

140.    IHDE never intended to pay the funds earmarked for Cureous to Cureous.

141.    IHDE intentionally deceived Cureous about the payments and use of the funds.

142.    IHDE has now used at least a portion of those funds to pay other vendors.

143.    IHDE has used at least a portion of those funds for its own business purposes other

than payment to Cureous.

144.    Cureous has suffered damages as a direct and proximate result of IHDE's fraudulent conduct in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

### Constructive Trust

145.    Cureous hereby incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

146.    IHDE obtained legal title to the funds from the Department of Health and Welfare through fraud, misrepresentation, and deceptive conduct.

147.    Under the circumstances, it was unconscionable for IHDE to retain the funds from the Department of Health and Welfare instead of paying the funds to Cureous pursuant to the Amended SOWs and as directed by the Department of Health and Welfare.

148.    The Department of Health and Welfare paid the funds to IHDE for the purpose of paying Cureous under a three-year agreement, and it is inequitable for IHDE to retain such funds.

## FIFTH CAUSE OF ACTION

### 11 U.S.C. § 523(a)(2)(A) – Nondischargeability – False Representations and Fraud

149.    Cureous hereby generally incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein and specifically incorporates the fraud allegations in paragraphs 122 through 144 as though set forth herein.

150.    IHDE misrepresented material facts to Cureous and engaged in a pattern of deceptive conduct regarding its intent to pay Cureous the funds earmarked for Cureous by the Department of Health and Welfare.

151.    IHDE was aware of the falsity of its representations to Cureous and the deceptiveness of its own conduct.

152.    Nonetheless, IHDE proceeded to intentionally deceive Cureous by continually representing it would pay Cureous but not paying Cureous.

153.    Cureous justifiably relied on IHDE's false representations regarding the payment and performance of obligations under the MSA, SOWs, and Amended SOWs.

154.    Cureous has suffered damages as a direct and proximate result of IHDE's fraudulent conduct and false representations in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION

### 11 U.S.C. § 523(a)(4) – Nondischargeability – Embezzlement

155.    Cureous hereby incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

156.    The Department of Health and Welfare paid funds earmarked for Cureous to IHDE based on IHDE's representations that IHDE had secured three-year agreements with Cureous.

157.    IHDE received those funds for the exclusive purpose of using them to pay Cureous.

158.    IHDE wrongfully misappropriated the funds earmarked to be paid to Cureous, withholding them from Cureous and using the funds for other purposes not approved by the Department of Health and Welfare.

159.    IHDE effected its misappropriation of funds by making fraudulent representations to each of Cureous and the Department of Health and Welfare and by engaging in deceptive conduct in connection with the license agreement and Amended SOW approval process.

## SEVENTH CAUSE OF ACTION

### 11 U.S.C. § 523(a)(6) – Willful and Malicious Injury

160.    Cureous hereby incorporates by reference each of the allegations in the preceding paragraphs as though fully set forth herein.

161.    IHDE deliberately and intentionally caused injury to Cureous when it withheld the funds earmarked to pay Cureous under the Amended SOWs.

162.    IHDE was or should have been substantially certain that withholding the funds from Cureous would cause an injury to Cureous because IHDE knew Cureous was relying on receipt of those funds based on IHDE's representations that the funds would be paid to Cureous and the Department of Health and Welfare's requirement that the funds be paid to Cureous.

163.    IHDE maliciously caused injury to Cureous when it wrongfully and intentionally withheld funds from Cureous, causing injury to Cureous without just cause or excuse.

### PRAYER

WHEREFORE, Cureous prays for judgment in its favor against IHDE as follows:

1.    For damages in an amount to be determined at the time of trial;

2.    For an order determining that the debt owed to Cureous is not dischargeable in IHDE's bankruptcy case pursuant to 11 U.S.C. § 523(a)(2)(A);

3.    For an order determining that the debt owed to Cureous is not dischargeable in IHDE's bankruptcy case pursuant to 11 U.S.C. § 523(a)(4);

4.    For an order determining that the debt owed to Cureous is not dischargeable in IHDE's bankruptcy case pursuant to 11 U.S.C. § 523(a)(6);

5.    For an order imposing a constructive trust on the funds paid by the Department of Health Welfare to IHDE for the benefit of Cureous;

6.      For an award of attorneys' fees and costs incurred in prosecuting this action as provided in the agreements and pursuant to Sections 12-120(3) and 12-121 of the Idaho Code and Rule 54 of the Idaho Rules of Civil Procedure;

7.      For prejudgment interest as allowed by law and pursuant to Section 28-22-104 of the Idaho Code; and

8.      For such other relief as the Court deems just and equitable under the circumstances.

## III.  <u>RESPONSE TO CLAIM OBJECTION</u>

Cureous filed Proof of Claim No. 2 in the bankruptcy case on October 17, 2022, seeking payment of its claim of $958,110.54 (the "***Proof of Claim***").  Cureous's claims for breach of contract, breach of the duty of good faith and fair dealing, and fraud are the basis for the Proof of Claim.  Cureous asserts that $469,767.83 of the Proof of Claim is secured by funds being held with the Ada County Court pursuant to the Writ of Attachment.  Cureous asserts that the remaining $488,432.71 of the amount of the Proof of Claim is unsecured.  IHDE objected to the Proof of Claim on November 7, 2022.  For the reasons set forth above, Cureous requests that the Court determine the validity of the Proof of Claim and allow it in full, including the allowance of $469,767.83 of the total claim as a secured claim.


DATED:  November 14, 2022.

STOEL RIVES LLP


 /s/ Nicole C. Hancock
Nicole C. Hancock
J.B. Evans

Attorneys for Cureous Innovations Inc.


CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND COUNTERCLAIM - 28

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 14, 2022, I filed the foregoing electronically through the CM/ECF System, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Matthew Todd Christensen on behalf of Plaintiff/Counterdefendant Idaho Health Data Exchange
mtc@johnsonmaylaw.com

Chad Moody on behalf of Plaintiff/Counterdefendant Idaho Health Data Exchange
crm@johnsonmaylaw.com

U.S. Trustee
ustp.region18.bs.ecf@usgoj.gov

AND I HEREBY CERTIFY that I served the foregoing by U.S. Mail, to the Plaintiff at the following address:

Matthew T. Christensen
199 N. Capitol Blvd., Ste 200
Boise, ID 83702

/s/ Nicole C. Hancock
Nicole C. Hancock

CUREOUS INNOVATIONS INC.'S ANSWER TO COMPLAINT TO AVOID PREFERENCE TRANSFERS AND RECOVER FUNDS, RESPONSE TO OBJECTION TO CLAIM, AND COUNTERCLAIM - 29

117402988.1 0073566-00001